UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SANDY A. DELEON,

      Plaintiff,

v.                              Case No. 2:20-cv-472-JLB-NPM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

---

## REPORT AND RECOMMENDATION

Plaintiff Sandy Deleon seeks judicial review of a denial of Social Security disability insurance benefits and supplemental security income. The Commissioner of the Social Security Administration filed the transcript[1] of the proceedings, and the parties filed a Joint Memorandum (Doc. 21). As discussed in this report, the decision of the Commissioner should be affirmed.

## I. Eligibility for Disability Benefits and the Administration's Decision

### A. Eligibility

The Social Security Act and related regulations define disability as the inability to do any substantial gainful activity by reason of one or more medically determinable physical or mental impairments that can be expected to result in death

---

[1] Cited as "Tr." followed by the appropriate page number.

or that have lasted or can be expected to last for a continuous period of not less than twelve months.[2] Depending on its nature and severity, an impairment limits exertional abilities like standing or reaching, nonexertional abilities like seeing or hearing, or aptitudes necessary to do most jobs such as using judgment or dealing with people.[3] And when functional limitations preclude a return to past work or doing any other work sufficiently available in the national economy (or an impairment meets or equals the severity criteria for a disabling impairment as defined in the regulatory "Listing of Impairments"), the person is disabled for purposes of the Act.[4]

## B.   Factual and procedural history

On September 7, 2017, Deleon applied for a period of disability and disability insurance benefits as well as supplemental security income. (Tr. 99-100, 210-220). She initially asserted an onset date of March 31, 2016, alleging disability due to the following: severe anxiety/depression; Type I Diabetic Insulin Dependent; and hypertension. (Tr. 73-74, 86-87). As of the alleged onset date, Deleon was 37 years old, and she completed some high school and received a GED. (Tr. 73, 210, 214,

---

[2] *See* 42 U.S.C. §§ 416(i), 423(d), 1382c(a)(3); 20 C.F.R. §§ 404.1505, 416.905.

[3] *See* 20 C.F.R. §§ 404.1594(b)(4), 416.994(b)(1)(iv); *see also* 20 C.F.R. §§ 404.1545(b)-(d) (discussing physical, mental, and other abilities that may be affected by impairment(s)), 416.945(b)-(d) (same), 404.1522(b) (providing examples of abilities and aptitudes necessary to do most jobs), 416.922(b) (same).

[4] *See* 20 C.F.R. §§ 404.1511, 416.911(a).

233). She formerly worked as a secretary, farm worker, packing-house supervisor, and waitress. (Tr. 28, 250-256).

Deleon's application was administratively denied initially on March 14, 2018, and upon reconsideration on July 11, 2018. (Tr. 73-98, 101-130). At Deleon's request, Administrative Law Judge Raymond Rodgers held a hearing on May 23, 2019. (Tr. 37, 161-162). During the hearing, Deleon amended her alleged onset date to October 22, 2016. (Tr. 41).

The ALJ issued an unfavorable decision on June 10, 2019, finding Deleon not disabled from the amended alleged onset date through the date of the ALJ's decision. (Tr. 15-30). Deleon's timely request for review by the administration's Appeals Council was denied. (Tr. 1-6). Deleon then brought the matter to this Court, and the case is ripe for judicial review.

## C.    The ALJ's decision

An ALJ must perform a five-step sequential evaluation to determine if a claimant is disabled. 20 C.F.R. §§ 404.1520(a)(1), 416.920(a)(1). This five-step process determines:

> (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether these impairments meet or equal an impairment listed in the Listing of Impairments; (4) if not, whether the claimant has the residual functional capacity ("RFC") to perform [her] past relevant work; and (5) if not, whether, in light of [her] age, education, and work experience, the claimant can perform other work that exists in significant numbers in the national economy.

*Atha v. Comm'r, Soc. Sec. Admin.*, 616 F. App'x 931, 933 (11th Cir. 2015) (internal quotation omitted); *see also* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).

The governing regulations provide that the Social Security Administration conducts this "administrative review process in an informal, non-adversarial manner." 20 C.F.R. §§ 404.900(b), 416.1400(b). Unlike judicial proceedings, the administration's hearings "are inquisitorial rather than adversarial." *Washington v. Comm'r of Soc. Sec.*, 906 F.3d 1353, 1364 (11th Cir. 2018) (quoting *Sims v. Apfel*, 530 U.S. 103, 111 (2000) (plurality opinion)). "Because Social Security hearings basically are inquisitorial in nature, '[i]t is the ALJ's duty to investigate the facts and develop the arguments both for and against granting benefits.'" *Id*. Indeed, "at the hearing stage, the Commissioner does not have a representative that appears 'before the ALJ to oppose the claim for benefits.'" *Id*. (quoting *Crawford & Co. v. Apfel*, 235 F.3d 1298, 1304 (11th Cir. 2000)). "Thus, 'the ALJ has a basic duty to develop a full and fair record. This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts.'" *Id*. (quoting *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015)).

Nonetheless, while the claimant is temporarily relieved of the burden of production during step five as to whether there are enough jobs the claimant can perform, the claimant otherwise has the burdens of production and persuasion throughout the process. *Id*. at 1359; *see also* 20 C.F.R. §§ 404.1512, 416.912

(providing that the claimant must prove disability); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1240 (11th Cir. 1983) ("The scheme of the Act places a very heavy initial burden on the claimant to establish existence of a disability by proving that he is unable to perform his previous work."); *Doughty v. Apfel*, 245 F.3d 1274, 1280 (11th Cir. 2001) ("[T]he overall burden of demonstrating the existence of a disability as defined by the Social Security Act unquestionably rests with the claimant.").

At step one of the evaluation, the ALJ found Deleon had not engaged in substantial gainful activity from her amended alleged onset date through the date of his decision. (Tr. 20). At step two, the ALJ characterized Deleon's severe impairments as: diabetes with neuropathy; degenerative disc disease of the lumbar spine; gastroparesis; chronic pain disorder; obesity; anxiety; depression; obsessive-compulsive disorder; and somatic disorder (Tr. 20). At step three, the ALJ determined Deleon did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. (Tr. 21).

As the predicate to step four, the ALJ arrived at the following RFC:

[T]he claimant has the residual functional capacity to: lift/carry 20 pounds occasionally and 10 pounds frequently; sit for six hours in an eight hour workday; stand and/or walk for six hours in an eight hour workday; no operation of foot controls; occasional climbing of ramps or stairs, but may never climb ladders, ropes, or scaffolds; occasional balancing, stooping, kneeling, and crouching; no crawling; must avoid concentrated exposure to extreme cold, extreme heat, humidity, and pulmonary irritants such as fumes, odors, dust, and gases; no exposure to hazardous machinery or unprotected heights; able to understand, remember, and carry out simple tasks; low stress work defined as only occasional decision-making and only occasional

changes in the work setting; and occasional interaction with coworkers, supervisors, and the public.

(Tr. 24).[5] Consequently, at step four, the ALJ determined Deleon was not capable of performing her past relevant work. (Tr. 28). At step five, the ALJ found Deleon could perform other jobs that existed in significant numbers in the national economy. In support, a vocational expert opined during the ALJ hearing that three occupations represent the kinds of jobs that an individual with Deleon's age, education, work experience, and RFC could perform:

(1)   housekeeper (DOT 323.687-014, light, SVP 2, 77,000 jobs nationally);

(2)   cafeteria attendant (DOT 311.677-010, light, SVP 2, 109,000 jobs nationally); and

(3)   bottling-line attendant (DOT 920.687-042, light, SVP 1, 12,000 jobs nationally).

(Tr. 28-29).[6]

---

[5] While not expressly noted in the RFC summary, the ALJ found Deleon capable of performing light work. (Tr. 25).

[6] The DOT numbers refer to the *Dictionary of Occupational Titles* and its detailed explanations concerning each occupation's requirements. These descriptions include exertion and skill levels. Exertion refers to the work—in a purely physical sense—that the job requires, and it is divided into five categories: sedentary, light, medium, heavy, and very heavy. Skill refers to how long it takes to learn the job, and it is divided into three categories: unskilled, semiskilled, and skilled. The "SVP" (Specific Vocational Preparation) provides further subdivision of the three skill categories into nine levels: SVP 1 and 2 are unskilled; SVP 3 and 4 are semiskilled; and SVP 5 through 9 are skilled.

## II.     Analysis

Deleon's appeal presents the following issues:

(1)     whether the ALJ erred in finding that Deleon's gastrointestinal impairments did not meet or equal listing 5.06(B); and

(2)     whether the ALJ erred in failing to consider whether Deleon could perform work on a regular and sustained basis despite her "numerous" emergency room visits and "extensive" hospitalizations.

(Doc. 21, pp. 5, 18).

### A.     Standard of review

The Court "may not decide the facts anew, make credibility determinations, or reweigh the evidence." *Buckwalter v. Acting Comm'r of Soc. Sec.*, 997 F.3d 1127, 1132 (11th Cir. 2021). While the Court must account for evidence both favorable and unfavorable to a disability finding and view the evidence as a whole, *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995), the Court's review of the administration's decision is limited to determining whether "it is supported by substantial evidence and based on proper legal standards." *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158 (11th Cir. 2004). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Goode v. Comm'r of Soc. Sec.*, 966 F.3d 1277, 1280 (11th Cir. 2020) (quoting *Crawford*, 363 F.3d at 1158)).

"[T]he threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The inquiry is "case-by-case," and "defers to the presiding ALJ, who has seen the hearing up close." *Id*. at 1157. If supported by substantial evidence, the ALJ's findings of fact are conclusive. 42 U.S.C. § 405(g). This means the district court will affirm, even if the court would have reached a contrary result as finder of fact, and even if the court finds that the evidence "preponderates against" the agency's decision. *Noble v. Comm'r of Soc. Sec.*, 963 F.3d 1317, 1323 (11th Cir. 2020) (quoting *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991)).

**B.      Whether the ALJ erred in finding that Deleon's gastrointestinal impairments did not meet or equal listing 5.06(B)**

Deleon contends the ALJ ignored or misread laboratory results showing that the criteria for listing 5.06(B) had been met. (Doc. 21, p. 18). Deleon has the burden of proving that an impairment meets or medically equals a listed impairment. *Barclay v. Comm'r of Soc. Sec. Admin.*, 274 F. App'x 738, 741 (11th Cir. 2008) (citing *Barron v. Sullivan*, 924 F.2d 227, 229 (11th Cir. 1991)). To demonstrate whether an impairment meets a listing, a plaintiff must show it meets *all* the specified medical criteria. *Bailey v. Soc. Sec. Admin., Comm'r*, 782 F. App'x 838, 840 (11th Cir. 2019) (citing *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990)). If an impairment meets only some of the criteria, it will not qualify, no matter the severity of the impairment. *Id.*

To meet the 5.06(B) listing for inflammatory bowel disease, the claimant must provide documentation by endoscopy, biopsy, appropriate medically acceptable imaging, or operative findings with two out of six enumerated criteria met despite continuing treatment as prescribed and occurring within the same consecutive six-month period. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.06(B). The two relevant criteria at issue, which Deleon claims she met, include the following:

1) Anemia with hemoglobin of less than 10.0 g/dL, present on at least two evaluations at least 60 days apart.

2) Serum albumin of 3.0 g/dL or less, present on at least two evaluations at least 60 days apart.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.06(B).

The Commissioner contends that to meet listing 5.06(B), Deleon must establish as a threshold matter that she was diagnosed with inflammatory bowel disease, Crohn's disease, or ulcerative colitis. (Doc. 21, p. 22) (citing *Wilson v. Barnhart*, 284 F.3d 1219, 1224 (11th Cir. 2002)). Despite *Wilson*'s (and the Commissioner's) suggestion, the regulations do not expressly state a specific diagnosis *must* occur. Rather, the regulations state that a claimant's impairments cannot meet the criteria of a listing based only on a diagnosis—instead, the claimant must have a medically determinable impairment that satisfies all the criteria in the listing. 20 C.F.R. §§ 404.1525(d), 416.925(d); *see also* 20 C.F.R. §§ 404.1521, 416.921 ("We will not use … a diagnosis … to establish the existence of an impairment(s).").

Here, listing 5.06 expressly states: "Inflammatory bowel disease ([listing] 5.06) includes, *but is not limited to*, Crohn's disease and ulcerative colitis." 20 C.F.R. Pt. 404, Subpt. P, App. 1, § E(1) (emphasis added). The description goes further to describe listing 5.06 as encompassing disorders that may be "distinct," but "share many clinical, laboratory, and imaging findings, as well as similar treatment regimens." *Id.* One symptom associated with listing 5.06 includes abdominal pain. *Id.* at § E(3). Here, the ALJ found, and the record supports, that Deleon has the severe impairment of gastroparesis (Tr. 20), which is a condition that slows the movement of the muscles in the stomach, preventing it from emptying properly. It is sometimes a complication of diabetes and may interfere with normal digestion and cause nausea, vomiting and abdominal pain. *See Gastroparesis*, MAYO CLINIC, https://www.mayoclinic.org/diseases-conditions/gastroparesis/symptoms-causes/syc-20355787 (last visited Nov. 15, 2021). And because gastroparesis seems to reasonably fall within the ambit of listing 5.06, the ALJ thoroughly considered whether Deleon's impairment satisfied its criteria.

With respect to the lab results at issue, Deleon had a serum albumin level of 3.0 g/dL or less on February 2, 2016 (Tr. 532), April 21, 2016 (Tr. 1281), May 26, 2016 (Tr. 1259), and on December 2, 15, and 22, of 2016 (Tr. 1116, 1138, 1175). Further, she had hemoglobin levels of less than 10.0 g/dL on August 2, 2015 (Tr. 1304), May 25, 2016 (Tr. 1265), September 7, 2017 (Tr. 1004, 1008), October 4,

2017 (Tr. 970), and on February 18 and 20, 2018 (Tr. 1729-1730, 1750, 1754). (Doc. 21, pp. 18-19). Rather than take issue with the lab results, the Commissioner contends the time frame is fatal to Deleon's argument.

First, the Commissioner notes that only the December 2016 serum albumin levels are within the relevant time frame because Deleon's amended alleged onset date is October 22, 2016. (Doc. 21, p. 23; Tr. 41). Second, the Commissioner contends that Deleon did not point to instances of anemia with hemoglobin levels less than 10.0 g/dL that were documented within six months of December 2016. (Doc. 21, p. 23).

The Commissioner's first argument is unpersuasive. As the ALJ noted, a claimant is disabled once she meets all the criteria of a listing. (Tr. 19); 20 C.F.R. §§ 404.1520(a)(4)(iii), 416.920(a)(4)(iii) ("If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled."). To meet listing 5.06(B), Deleon must have four separate lab results within a six-month window, the last of which would establish the disability onset date, assuming the listing's criteria were all met. Therefore, in the context of a listing, such as 5.06(B), the ALJ must consider evidence—in particular, lab results—reasonably predating her alleged onset date if they would culminate in a finding of disability at step three.

Here, Deleon must show she has two qualifying hemoglobin tests that were taken within the same six months in which she had two qualifying serum albumin results. (Doc. 21, p. 23); 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 5.06(B). Deleon does not meet the listing criteria.

Only Deleon's February 2, 2016 (Tr. 532), April 21, 2016 (Tr. 1281), and May 26, 2016 (Tr. 1259), lab results fall within six months of each other. But Deleon cannot show she has two qualifying hemoglobin results that fall in a consecutive six-month window in relation to any of the three serum albumin results. Her August 2, 2015 hemoglobin result (Tr. 1304) falls exactly six months before the February 2, 2016 serum albumin result, but this would only lead to two out of four qualifying lab results in a six-month window. And utilizing Deleon's May 25, 2016 hemoglobin result (Tr. 1265) would lead to only three qualifying lab results in a six-month period.

Deleon fails to address this point. Rather, she argues there were more occasions in which both her hemoglobin and serum albumin levels came close to the listing's thresholds. (Doc. 21, p. 19).[7] To "equal" rather than meet a listing, a

---

[7] Specifically, Deleon notes she had hemoglobin levels of 10.3 in February 2018 and November 2018 (Tr. 1195, 1867); 10.5 in December 2016 and February 2018 (Tr. 1130, 1137, 1735, 1744); 10.7 in February 2018 (Tr. 1757); and 10.8 in June 2016 (Tr. 1808). And Deleon states she had serum albumin levels of 3.1, just above listing level, in February 2016 (Tr. 1290); April 2016 (Tr. 1281); and August 2017 (Tr. 1030). And she had serum albumin levels of 3.2 in September 2017 (Tr. 994) and November 2018 (Tr. 1900) and 3.3 in November 2016 (Tr. 1189); April 2017 (Tr. 1077); May 2017 (Tr. 1066); and July 2017 (Tr. 1053). (Doc. 21, p. 19).

claimant's impairment or combination of impairments must be "at least equal in severity and duration to the criteria of any listed impairment." 20 C.F.R. §§ 404.1526(a), 416.926(a). The claimant has the burden of presenting evidence describing how the impairment medically equals a listing. *See Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987); 20 C.F.R. §§ 404.1520(a)(4)(iii), (d), 416.920(a)(4)(iii), (d). The administration can find medical equivalency in three ways, only one of which seems pertinent here:

> (1)(i) If you have an impairment that is described in appendix 1, but—
>
>> (A) You do not exhibit one or more of the findings specified in the particular listing, or
>>
>> (B) You exhibit all of the findings, but one or more of the findings is not as severe as specified in the particular listing,
>
> (ii) We will find that your impairment is medically equivalent to that listing if you have other findings related to your impairment that are at least of equal medical significance to the required criteria.

20 C.F.R. § 404.1526(b)(1), 416.926(b)(1) (Mar. 27, 2017). Deleon stops short of making this showing. Instead, she claims her serum albumin and hemoglobin test results were close to the listing requirements, and "[g]iven the complicated nature of Ms. Deleon's impairments and listing 5.06, the ALJ should have sought testimony from a medical expert as to whether an impairment was met or equaled." (Doc. 21, p. 20). But the Social Security Ruling cited by Deleon, SSR 96-6P, 1996 WL 374180 (S.S.A. July 2, 1996), has been rescinded and replaced by SSR 17-2P, 2017 WL 3928306, *1 (S.S.A. Mar. 27, 2017).

The operative ruling states: "Whether an impairment(s) medically equals the requirements of a listed impairment is an issue reserved to the Commissioner," and not a medical expert. SSR 17-2P, 2017 WL 3928306, *4. At the initial and reconsideration levels, state agency consultants review evidence and determine whether a listing was met or equaled. This procedure was followed here, and the state agency medical consultants determined Deleon did not meet or equal a listed impairment, including any part of listing 5.06. (Tr. 80, 93, 109, 124). But at the hearing level, the ALJ makes this determination. "To assist in evaluating this issue, [ALJs] may ask for and consider evidence from medical experts…." SSR 17-2P 2017 WL 3928306, *3. As the administrative ruling further explains:

> An [ALJ] must consider all evidence in making a finding that an individual's impairment(s) does not medically equal a listing. If an [ALJ] believes that the evidence already received in the record does not reasonably support a finding that the individual's impairment(s) medically equals a listed impairment, the adjudicator is not required to articulate specific evidence supporting his or her finding that the individual's impairment(s) does not medically equal a listed impairment. Generally, a statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation for this finding. An adjudicator's articulation of the reason(s) why the individual is or is not disabled at a later step in the sequential evaluation process will provide rationale that is sufficient for a subsequent reviewer or court to determine the basis for the finding about medical equivalence at step 3.

*Id.* at *4. So here, the ALJ could have, but was not required to, consult a medical expert. The ALJ found Deleon did not meet listing 5.06(B), and he sufficiently stated Deleon's impairments did not rise to the level of severity required to meet or equal a listing, singly or in combination. (Tr. 21). And as SSR 17-2P explains, such a

statement is enough to constitute sufficient articulation of the ALJ's consideration of medical equivalency. Accordingly, the ALJ adhered to the regulations and did not err in finding that Deleon did not meet or equal listing 5.06(B).

### C. Whether the ALJ erred in failing to consider whether Deleon could perform work on a regular and sustained basis despite her "numerous" emergency room visits and "extensive" hospitalizations

During the two-year period covered by the evidence of record, Deleon claims she was hospitalized for a total of 79 days. (Doc. 21, pp. 6-7 (citing Tr. 41, 928-929, 958-974, 977-1002, 1003-1022, 1029-1038, 1041-1044, 1048-1063, 1090, 1107, 1121-1128, 1159-1164, 1194-1211, 1447-1492, 1680-1776, 1866-1873 ,1874-1879, 1879-1882, 1882-1889, 1890-1893)). Of these hospitalizations, at least eighteen consisted of emergency room treatments. (Doc. 21, p. 7 (citing 440-464, 632-634, 662-671, 882-894, 896-904, 913-920, 952-955, 1026, 1755-1778, 1779-1781, 1782-1787, 1877-1879, 1895-1902, 1908-1916, 1933-1939, 1940-1945, 1945-1951)). Deleon argues the ALJ erred by not considering the impact of her numerous hospitalizations on her "ability to work on a regular and sustained basis throughout the relevant time period." (Doc. 21, p. 7).

In *Cherkaoui v. Commissioner of Social Security*, 678 F. App'x 902 (11th Cir. 2017), the Eleventh Circuit was "unpersuaded by Cherkaoui's argument that the excessive number of medical appointments she attended rendered her disabled." *Id.* at 904. "[W]hether the number of medical appointments affects her ability to work

is not an appropriate consideration for assessing [RFC] because that determination considers only the functional limitations and restrictions resulting from medically determinable impairments." *Id.* (citing SSR 96-8p). This is because the "number of medical appointments she attended is not a functional limitation caused by her impairments that would affect her physical or mental capabilities." *Id.* Therefore, a request "to consider the effect of the evidence of her excessive number of medical appointments on her residual functional capacity … is beyond the scope of our review since it would require reweighing the evidence of [the claimant's] capabilities for employment." *Id.* (citing *Dyer v. Barnhart*, 395 F.3d 1206, 1210 (11th Cir. 2005)). Nevertheless, an ALJ must still consider the effects of a claimant's treatment in conjunction with other evidence in the record. *Palencia v. Saul*, No. 8:19-cv-1062-T-AEP, 2020 WL 5742981, *8 (M.D. Fla. Sept. 25, 2020); SSR 96-8P, 1996 WL 374184, *5 (S.S.A. July 2, 1996) ("The RFC assessment must be based on *all* of the relevant evidence in the case record, such as … [t]he effects of treatment, including limitations or restrictions imposed by the mechanics of treatment (e.g., frequency of treatment, duration, disruption to routine, side effects of medication).") (emphasis in original). Here, the ALJ did so. (Tr. 24-28).

For instance, the ALJ considered Deleon's absenteeism and being "off task" during the hearing. (Tr. 42, 65, 69-71). The ALJ asked the vocational expert about the maximum permissible off task time or absenteeism that employers generally

tolerate. (Tr. 69). The vocational expert responded that it is complicated, but most employers generally tolerate one absence every four to six weeks, especially government jobs and large employers. (Tr. 69).

The ALJ also discussed this evidence throughout his decision. (Tr. 25-27). Deleon claims that by only mentioning *some* of her hospitalizations in the decision, the ALJ did not consider *all* of her hospitalizations. (Doc. 21, pp. 6-7). But "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision … is not a broad rejection." *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005); *see Raymond v. Soc. Sec. Admin., Comm'r*, 778 F. App'x 766, 775 (11th Cir. 2019). Therefore, the ALJ was not required to cite every record in which Deleon was hospitalized. Even so, explicit references to her "numerous hospitalizations" demonstrate the ALJ considered this evidence.

As the ALJ discussed, although Deleon had an extensive history of hospitalizations for her abdominal pain, imaging of her abdomen and pelvis was generally unremarkable. (Tr. 25, 442, 958, 984-985, 1111). The ALJ noted that Deleon had sought emergency department treatment on numerous occasions for her gastroparesis, sometimes multiple times a month, and that she reported severe abdominal pain at those visits. (Tr. 25, 446, 898, 1886). In December 2016, Deleon had an abnormal gastric emptying scan that showed she had delayed gastric emptying. (Tr. 25, 1048).

17

The ALJ discussed Deleon's emergency room treatment notes from November 2017, in which treatment providers noted that she had undergone multiple workups, including MRIs, CTs, and ultrasounds. (Tr. 25-26, 1449). Despite the extensive workup, there was no identifying source for Deleon's pain, other than gastroparesis. (Tr. 25-26, 1449). At that time, on physical examination, Deleon had some generalized abdominal tenderness, but was otherwise normal. (Tr. 26, 1452-1453). Imaging of her abdomen and pelvis was negative for acute intra-abdominal pathology. (Tr. 26, 1458).

On February 5, 2018, Deleon presented at the hospital reporting mid-upper abdominal pain. (Tr. 26, 1886). Her treatment provider indicated, and the ALJ discussed, that she had been hospitalized thirteen times since July 2017 with complaints of abdominal pain. (Tr. 26, 1886). Deleon had also been to the emergency room three times within the last few days for her abdominal pain. (Tr. 26, 1886). Her pain was controlled during the brief hospitalization and she was discharged on February 8, 2018. (Tr. 26, 1886).

The ALJ continued, noting that Deleon returned to the emergency room on February 16, 2018, for abdominal pain. (Tr. 26, 1682). Aside from tenderness in the epigastric area, Deleon was otherwise normal. (Tr. 26, 1685). Additional CT imaging of Deleon's abdomen and pelvis were negative for acute findings, showing only hepatic steatosis. (Tr. 26, 1712). A gastric-emptying study showed that Deleon

had a marked prolongation of gastric emptying. (Tr. 26, 1738-1739). Diagnoses for the encounter included chronic pain syndrome and gastroparesis, both of which the ALJ found were severe at step two of the sequential evaluation. (Tr. 20, 26, 1692-1693). Finally, in the ALJ's specific discussion, he noted that Deleon presented with abdominal pain several additional times in 2018, but imaging of her abdomen and pelvis was always unremarkable. (Tr. 26, 1871, 1877, 1879, 1885).

The ALJ explained that Deleon's statements about the intensity, persistence, and limiting effects of her symptoms were inconsistent with the longitudinal evidence of record. (Tr. 27). On multiple occasions, Deleon's treatment providers noted that her symptoms appeared out of proportion to her problems. (Tr. 27, 591, 1789). And some of her medical providers suspected that Deleon's hospital visits constituted drug-seeking behavior. (Tr. 955, 1339, 1460, 1469, 1692).

Despite numerous hospitalizations for abdominal pain, objective testing had shown no identifying source for Deleon's pain, other than gastroparesis. (Tr. 27, 1449). Even so, Deleon testified as to the functional limitations of her abdominal issues, specifically that doing heavy lifting causes pain in her stomach. (Tr. 24, 55-56). And the ALJ accounted for these impairments in the RFC by limiting her to a reduced range of light work and, in particular, by limiting her ability to lift and carry. (Tr. 24, 28).

In addition, no physician—treating or otherwise—opined that Deleon's gastroparesis or abdominal pain were disabling. (Tr. 24-28). *Cf. Powell v. Comm'r of Soc. Sec.*, 571 F. App'x 914, 917 (11th Cir. 2014) (noting claimant "did not present any opinions from a treating or examining physician indicating that she was disabled or had limitations greater than those reflected in the RFC"); *Nye v. Comm'r of Soc. Sec.*, 524 F. App'x 538, 542 (11th Cir. 2013) (noting claimant "had not provided any statements from a treating physician indicating that he was unable to work or that he had a condition that would limit his activities" as a factor that weighed against a finding of disability). Relying on the record as a whole, substantial evidence supports the ALJ's conclusion that Deleon remained capable of a reduced range of light work. (Tr. 24-28).

Although Deleon argues the ALJ should not substitute his own lay judgment for the judgment of medical professionals who thought it was appropriate to treat and admit Deleon (Doc. 21, p. 7),[8] she asks the Court to do exactly that. Deleon speculates that her somatic disorder[9] (which the ALJ found was severe) was an

---

[8] The ALJ did not substitute his own interpretation when noting that imaging of Deleon's abdomen and pelvis had been generally "unremarkable." (Doc. 21, p. 7 (citing Tr. 25)). In fact, the term "unremarkable" is derived directly from Deleon's treatment notes. (Tr. 442 (CT abdomen); *see also* Tr. 984-985, 1111 (mostly "normal" findings in CT abdomen and pelvis exams)).

[9] Citing WebMD, Deleon explained, "The somatoform disorders are a group of psychological disorders in which a patient experiences physical symptoms despite the absence of an underlying medical condition that can fully explain their presence." (Doc. 21, p. 8). She further noted that "[a] patient with a somatoform disorder will experience symptoms that are in fact very real, despite the lack of an underlying physical impairment." *Id.* (citing *United States v. Farmer*, 647 F.3d 1175,

underlying cause of her abdominal pain and gastroparesis, where her treatment providers could find no underlying cause. (Doc. 21, pp. 8-9). However, she does not point to any evidence that corroborates this conjecture, nor does she point to any evidence that the ALJ overlooked or failed to properly consider evidence related to this point. "[T]he mere existence of [an] impairment[] does not reveal the extent to which [it] limit[s] [a claimant's] ability to work or undermine the ALJ's determination in that regard." *Moore v. Barnhart*, 405 F.3d 1208, 1213 n.6 (11th Cir. 2005) (citing *McCruter v. Bowen*, 791 F.2d 1544, 1547 (11th Cir. 1986); *see also Hutchinson v. Astrue*, 408 F. App'x 324, 325 (11th Cir. 2011) (stating "proof of the mere existence of impairments does not prove the extent to which they limit a claimant's ability to work"). In other words, "a diagnosis or a mere showing of 'a deviation from purely medical standards of bodily perfection or normality' is insufficient; instead, the claimant must show the effect of the impairment on her ability to work." *Wind v. Barnhart*, 133 F. App'x 684, 690 (11th Cir. 2005) (quoting *McCruter*, 791 F.2d at 1547). Deleon has not sufficiently shown that her diagnosis of somatic disorder was related to her treatment for abdominal pain or that the impairment caused disabling limitations.

---

1176 n.2 (8th Cir. 2011) ("A somatoform disorder is a mental disorder characterized by physical symptoms that suggest physical illness or injury, but which have no identifiable physical cause, i.e., medical test results are either normal or do not explain the person's symptoms. Somatoform disorders are not the result of conscious malingering (fabricating or exaggerating symptoms for secondary motives); sufferers perceive their symptoms as real.")).

Finally, Deleon criticizes the ALJ for stating: "The record also does not show [Deleon] has required any recent treatment from any gastrointestinal specialist." (Doc. 21, p. 9; Tr. 28). She claims this was a "significant" factor for the ALJ, which was improper because she could not afford to see a gastroenterologist after November 2018. (Doc. 21, p. 9; Tr. 48-49). She argues the ALJ had a duty to consider her inability to afford treatment before drawing any conclusions about alleged gaps in her treatment history. ((Doc. 21, p. 9 (citing *Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988)). It is true that if a claimant "cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law." 848 F.2d at 1213. But here, the ALJ's statement does not facially appear to imply Deleon was noncompliant with treatment. Even if it does draw a negative implication, Deleon has not shown that the ALJ committed reversible error in failing to consider the financial reasons for any noncompliance because his finding that she was not disabled was "not significantly based on a finding of noncompliance." *Ellison v. Barnhart*, 355 F.3d 1272, 1275 (11th Cir. 2003).

## III.   Conclusion

Upon consideration of the submission of the parties and the administrative record, the decision of the Commissioner is supported by substantial evidence. Accordingly, it is **RESPECTFULLY RECOMMENDED**:

The decision of the Commissioner be **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g), and the Clerk of Court be directed to enter judgment in Defendant's favor.

Reported in Fort Myers, Florida on November 15, 2021.

*Nicholas P. Mizell*

NICHOLAS P. MIZELL
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections "waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *See* 11th Cir. R. 3-1. **To expedite resolution, parties may file a joint notice waiving the 14-day objection period.**